**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN LUKE CURTIN,<br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>*Commissioner of Social Security*,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | NO. 4:25-CV-01577<br><br><br><br>(CAMONI, M.J.) |

# MEMORANDUM OPINION

Plaintiff John Luke Curtin brought this action under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for disability benefits under Titles II and XVI of the Social Security Act. Transcript, doc. 6-13 at 30. He challenges the Administrative Law Judge's (ALJ) findings at steps three and five, as well as residual functional capacity findings. *See* Pl.'s Br., doc. 7 at 10, 12, 15-16. Because the ALJ's determinations are supported by substantial evidence, the Court will affirm the decision of the Commissioner.

# I. BACKGROUND

## A. Procedural History

On February 4, 2020, Curtin applied for disability benefits under Titles II and XVI of the Social Security Act, alleging onset of disability beginning July 3, 2019.[1] Docs. 6-3 at 2, 10. Following an initial denial of his claim, and after exhausting administrative remedies, Curtin filed a prior action in this Court, challenging the agency's decision. *See Curtin v. Kijakazi*, No. 4:21-CV-1926, Complaint, doc. 1. The Court vacated the agency's decision and remanded the case. *See id.*, April 12, 2023, Order, doc. 14. After remand and further proceedings, the ALJ again decided that Curtin has not been under a disability. *See* doc. 6-13 at 30.

The ALJ's decision, therefore, became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Curtin's action seeking judicial review of the Commissioner's decision. Complaint, doc. 1. This case is fully briefed (docs. 7-8) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and

[1] Curtin later amended his onset of disability date to March 11, 2021. *See* Hr'g Tr., doc. 6-13 at 42.

Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 5.

### B. The Disability Determination Process

To determine whether a claimant is disabled under the Social Security Act, an ALJ applies a "five-step sequential evaluation process." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ assesses whether the claimant:

1. has engaged in substantial gainful activity since the onset of the alleged disability;
2. had a severe medically determinable impairment;
3. suffered from an impairment listed in the regulations as presumptively disabling;
4. could return to his past work; and
5. could perform other available work in the national economy.

*See* §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

At step four, the ALJ also determines whether the claimant's RFC allows the claimant to continue his previous employment. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. §§ 404.1545(a)(1), 416.945(a)(1). The claimant bears the burden of persuasion through step four, while at step

five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful employment other than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**C. Issues on Appeal**

After following the five-step sequential analysis, the ALJ determined that Curtin "has not been under a disability . . . from March 11, 2021 through the date of this decision." Doc. 6-13 at 30. The ALJ determined at the RFC stage that Curtin has the ability:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except 4 hours stand/walk, occasional postural movements except he can never climb ladders, ropes, and scaffolds, he should avoid concentrated exposure to vibration, dangerous machinery, and unprotected heights. He is limited to few, if any, work place changes and only occasional interaction with supervisors, coworkers, and the public.

*Id.* at 25-26. The ALJ denied Curtin's disability claim at step five, after considering his "age, education, work experience, and residual functional capacity," because he found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 29.

Curtin argues that the ALJ erred by: (1) failing to use a higher age for purposes of the grid rules; (2) refusing to incorporate claimant's need for a cane in the RFC; (3) failing to consider chronic pain syndrome as a severe impairment; and (4) failing to properly evaluate medical opinion evidence. *See* doc. 7 at 10, 12, 15-16. The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II. LEGAL STANDARD

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not

only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Curtin is disabled, but whether the Commissioner's finding that Curtin is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III. <u>ANALYSIS</u>

Curtin argues that the ALJ erred by: (1) failing to use a higher age for purposes of the grid rules; (2) refusing to incorporate claimant's need for a cane in the RFC; (3) failing to consider chronic pain syndrome as a severe impairment; and (4) failing to properly evaluate medical opinion evidence. *See* doc. 7 at 10, 12, 15 16. After careful review, the Court finds that the ALJ's decision was supported by substantial evidence and will affirm.

### A. The ALJ properly evaluated the age category for purposes of the grid rules.

Curtin first argues that the ALJ erred by failing to use a higher age for purposes of the grid rules by failing to consider his RFC when determining the borderline age situation. *Id.* at 10. The Commissioner contends that the ALJ was not required to use a higher age for purposes of the grid rules because Curtin was not in a "borderline age situation," but was more than six months away from turning fifty-five. *See* Def.'s Br., doc. 8 at 7-8.

Known as "the grids," an ALJ must apply the rules in 20 C.F.R. Part 404, Subpart P, App. 2, to consider the claimant's physical abilities, age, education, and work experience, and direct a finding of disability or

lack of disability depending on the combination of these factors. *Kane v. Heckler*, 776 F.2d 1130, 1132 (3d Cir. 1985). In considering a claimant's age, an ALJ determines to which age category a claimant belongs based on the claimant's chronological age. *See* 20 C.F.R. § 404.1563(a). Important differences exist between age categories. *Kane*, 776 F.2d at 1134. For instance, as relevant in this case, the age of persons in the advanced age category (age fifty-five or older) "significantly affects a person's ability" to engage in substantial gainful activity, while the age of persons in the approaching advanced age category (age fifty to fifty-four), merely "seriously affect[s their] ability to adjust to" a significant number of jobs in the national economy. *See* C.F.R. § 404.1563(d), (e).

At issue here is whether Curtin's case may be considered a "borderline situation" where his age falls within a "few months" of the starting date of the advance age category, so that the grid rules are not to be employed mechanically. *See Kane*, 776 F.2d at 1133, citing 20 C.F.R. § 404.1563(a); *see also* 20 C.F.R. § 404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you

are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.").

Here, a borderline situation did not exist because Curtin was not within a "few months" of turning fifty-five. At the time of the ALJ's decision, Curtin was more than six months from turning fifty-five. *See* doc. 6-13 at 29 ("The claimant is close to being 6 months away from turning 55[.]"). Under the Commissioner's internal guidance, "SSA considers a few days to a few months to mean a period not to exceed six months." HALLEX I-2-2-42(B)(1), 2016 WL 1167001, at *1 (S.S.A. 2016); *see also* SSA POMS DI 25015.006(B) (2017) ("What we mean by 'within a few days to a few months'"). Because Curtin was more than six months from the starting date of the advanced age category, a borderline situation did not exist and the ALJ was not required to use a higher age for purposes of the grid rules or to even consider the use of the older age category. *See Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005) ("Nor is there any authority extending the benefits of a 'borderline' age determination to persons like [the claimant] who are within five (5) to six (6) months of their [start date of an age category] birthday."). In short, the ALJ did not err.

### B. The ALJ did not err in failing to include Curtin's need for the use of a cane.

Curtin next argues that the ALJ erred by failing to include his need for a cane in the RFC. Doc. 7 at 12. An ALJ is mandated to consider only "medically required" ambulatory-assistive devices. *See* SSR 96-9p, 1996 WL 374185, at *7. The regulations provide:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.
>
> . . .
>
> In these situations, too, it may be especially useful to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work.

*Id.*

Here, the ALJ considered Curtin's need for the use of a cane. The ALJ, however, found that Curtin's use of a cane was recommended by a medical provider years after his alleged onset date of March 2021. Doc.

6-13 at 27. The ALJ also noted Curtin "had a normal gait" during several examinations. *Id*. Thus, the ALJ's consideration of Curtin's need for the use of a cane was supported by substantial evidence. *See Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (finding insufficient the evidence of a claimant's need for a cane where the medical records did not discuss its medical necessity).

Even assuming *arguendo* that the ALJ erred in failing to include a specific limitation for the use of a cane in the RFC, the alleged error was harmless. As suggested by SSR 96-9p, the ALJ consulted a vocational resource to make the judgment that, despite Curtin's use of a cane, he can perform a significant number of jobs in the national economy. *See* doc. 6-13 at 30; Hr'g Tr., *id*. at 53 ("The cane isn't an issue with the occupations identified, given the ambulating is not a significant part of the job tasks."). Thus, Curtin's argument fails as the claimed error did not affect the outcome of the analysis. *See Rutherford v. Barnhart*, 399 F.3d 546, 556 (3d Cir. 2005) ("Just as importantly, [the claimant's] argument is problematic because the ALJ actually considered her claimed need for a cane despite his concerns about the claim, both in an

alternative hypothetical question submitted to the vocational expert and in his final decision.").

### C. The ALJ did not err by failing to consider Curtin's chronic pain syndrome.

Curtin next argues that the ALJ erred by failing to consider his chronic pain syndrome as a severe impairment. Doc. 7 at 15. The Court disagrees.

A claimant has the burden to establish a medically determinable impairment. At step two, a claimant must establish a physical or mental impairment which must be shown by "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The ALJ "will not use [a claimant's] statement of symptoms, *a diagnosis*, or a medical opinion to establish the existence of an impairment[.]" *Id.* (emphasis added). The existence of a medically determinable impairment "cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." SSR 96-4p, 1996 WL 374187, at *1. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (explaining that the ALJ need not discuss all impairments but only those that are medically determinable); *Jones v. Sullivan*, 954 F.2d 125, 128

(3d Cir. 1991) (finding that mere diagnosis of an impairment, without more, does not warrant an award of disability benefits).

Here, Curtin has failed to demonstrate, beyond subjective claims and mere diagnoses, that his asserted chronic pain syndrome amounts to a medically determinable physical or mental impairment. Curtin asks the Court to consider various treatment records, but each record reflects no more than diagnoses. *See* doc. 7 at 16. They do not contain any "medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1521, that were employed to examine Curtin for chronic pain syndrome. In the absence of objective demonstrations of medical abnormalities, i.e., medical signs and laboratory findings, Curtin's treatment records—which indicate no more than mere diagnoses, assessments, or subjective complaints—fail to establish a medically determinable impairment. *See* SSR 96-4p, 1996 WL 374187, at *1. Because the record lacks objective medical evidence to support Curtin's subjective complaints of symptoms resulting from his chronic pain syndrome, the ALJ was not required to discuss the impairment. *See Rutherford*, 399 F.3d at 554; *Jones*, 954 F.2d at 128.

### D. The ALJ's RFC findings are supported by substantial evidence.

Finally, Curtin argues that the ALJ erred in evaluating the medical opinions and prior administrative agency findings in assessing his RFC. *See* doc. 7 at 16. Specifically, Curtin argues that the ALJ erred in finding nurse Hammon's opinion unpersuasive while finding Dr. Whang's opinion persuasive. *See id.*

An administrative judge's burden of articulation is not high. When weighing medical opinions, all that an ALJ must explain are the reasons for the decision. *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 638 (3d Cir. 2024). "The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Stancavage v. Saul*, 469 F. Supp. 3d 311, 333 (M.D. Pa. 2020), citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). To satisfy the articulation requirements for supportability and consistency, "a judge need not reiterate the magic words 'support' and 'consistent' for each doctor." *Zaborowski*, 115 F.4th at 639. Instead, it is sufficient for an ALJ to "weave supportability and consistency throughout her analysis of which doctors were persuasive." *Id.* Here, the ALJ's discussion of nurse Hammon and Dr. Whang's opinions was sufficient.

First, the ALJ's evaluation of nurse Hammon's opinion was supported by substantial evidence. The ALJ explained that nurse Hammon's opinion is not consistent with her own clinical examination *See* doc. 6-13 at 28 (noting negative straight leg raises, normal deep tendon reflex and sensory findings, and full strength in all extremities). The ALJ, therefore, did not err in evaluating nurse Hammon's opinion. *See Grogan v. Comm'r of Soc. Sec.*, 459 F. App'x 132, 139 (3d Cir. 2012) (finding sufficient an ALJ's medical opinion evaluation that found a restrictive opinion inconsistent with the examiner's own treatment records); *see also Swank v. O'Malley*, No. 23-1244, 2024 WL 4858586, at *10 (M.D. Pa. Nov. 21, 2024) (finding no error in an ALJ's analysis of the consistency factor where the ALJ noted that a claimant's treating source's opinion was internally inconsistent and was at odds with many treatment notes).

Second, the ALJ's evaluation of Dr. Whang's opinion was also supported by substantial evidence. The ALJ explained that Dr. Whang's opinion is supported by notations to Curtin's diagnostic testing and was consistent with the record. Doc. 6-13 at 28. "There was no need to say more than that." *Zaborowski*, 115 F.4th at 640 (finding sufficient

articulation of the consistency factor where an ALJ explained how the opinion fit with other evidence of a claimant's condition and treatability).

On the whole, the ALJ's decision is supported by substantial evidence, and thus the Court will affirm the decision of the Commissioner.[2]

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED**.

An appropriate order follows.

Date: September 29, 2026

s/*Sean A. Camoni*
Sean A. Camoni
United States Magistrate Judge

---

[2] Curtin's remaining argument regarding the ALJ's alleged failure to consider multiple impairments and symptom evaluation amount to no more than a request for the Court to reweigh the evidence, and thus will be dismissed. *See* doc. 7 at 20-21; *see Jones v. Barnhart*, 365 F.3d 501, 505 (3d Cir. 2024) (explaining that an ALJ need not use particular language or adhere to a particular format in conducting his analysis); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."); *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence.").